**Bill GATES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. J–C–86–198.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

April 13, 1988.

Bill Gates, Wixom, Mich., pro se.

John B. Consevage, Office of Sp. Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., Charles Banks, U.S. Atty., Little Rock, Ark., for defendant.

MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court are the defendant's motions for summary judgment. In its first motion, the defendant seeks summary judgment on the issue of the plaintiff's liability for promoting an abusive tax shelter in violation of 26 U.S.C. § 6700. In its second motion, the defendant seeks summary judgment on the issue of its calculation of the penalty imposed under Section 6700. The plaintiff has responded.

For the reasons set forth below, the Court will grant both motions.

The plaintiff, proceeding *pro se*, filed this action to contest a $69,000 penalty assessment made against him by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6700 ("Promoting abusive tax shelters, etc."). The IRS alleges that the plaintiff solicited, recruited and managed a sales force for two separate tax shelter programs operated by H & L Schwartz, Inc., a California corporation. One program involved audio cassette tape master recordings and was promoted under the name American Educational Leasing ("AEL"). The other program involved videogame master programs and was promoted under the name American Videogame Leasing ("AVL").

On October 29, 1987, the United States District Court for the Central District of California found that H & L Schwartz, Inc., engaged in conduct subject to penalty under Section 6700 and permanently enjoined the company, and Chief Operating Officer Illya Bond, from:

A. Taking any action in furtherance of the organization, promotion, marketing, leasing or selling of the American Educational Leasing Program and/or the American Videogame Leasing Program (hereinafter, the "Tax Shelters");

B. Representing that an investor in either of these Tax Shelters is entitled to Federal income tax deductions or credits, including investment tax credits and/or deductions for lease payments and distribution expenses, and from furnishing or distributing any oral or written information that indicates otherwise;

*United States v. H.L. Schwartz, Inc.*, CV No. 87–1122, United States District Court, Central District of California (October 29, 1987).

On November 16, 1987, the United States Tax Court found that investors in the AEL program did not have an actual and honest profit objective. In disallowing the investors' deductions, the Tax Court concluded that Schwartz Inc.'s AEL program "had no economic substance" and that the fair market value of the AEL master was "no more than $300." The Court stated that the term "sham or fraudulent transaction" would describe the transaction entered into by the investors. *Apperson v. Commissioner*, Docket No. 26815–85, United States Tax Court (November 16, 1987).

Section 6700 imposes a penalty on any person who:

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.

For its motion for summary judgment, the defendant contends that it is uncontroverted that the plaintiff:

(a) organized, assisted in the organization or participated in the sale of the Schwartz Inc., AEL and AVL programs; and

(b) made or furnished "gross valuation overstatements" in connection with his assistance in the organization or participation in the sale of Schwartz, Inc. investment programs.

 As to the plaintiff's organizational and sales activities, the defendant contends that the plaintiff presented the Schwartz Inc., programs and related sales

memoranda to tax preparers that he solicited and recruited to market the programs. The tax preparers then presented the program to investors using the same sales booklets that were provided to them by the plaintiff. Defendant's exhibits J and K show that the plaintiff wrote letters to potential salesmen using the American Educational Leasing letterhead and executed salesmen fee contracts as a "staff representative" of Schwartz, Inc.

The plaintiff denies that he organized, assisted in the organization of, or participated in the sale of the AVL and AEL programs. Although there appears to be an issue over the plaintiff's role in organizing or assisting in the organization of the programs, it is quite clear to the Court that the plaintiff participated in the sale of the programs. Under the statute it is not necessary that the government show both organization and sales activities. A showing of one or the other is sufficient to satisfy the first prong of the statute. The plaintiff's position is that he himself never directly executed a sale. However, the plaintiff does not deny that he solicited, trained and equipped salesmen for the AEL and AVL programs. In the Court's opinion this is sufficient to show that the plaintiff "participated in the sale" of the AEL and AVL programs within the meaning of Section 6700.

The plaintiff cites the case of *John S. Osborn v. United States of America*, LR-C-84-938 (1986), in which a jury found that plaintiff, Osborn did not participate in the sale of interests in the AEL program. Osborn, a tax preparer, admitted that he entered into a contractual agreement with AEL that allowed him to become an independent broker and that he subsequently contacted a number of clients for the purpose of discussing the viability of the AEL program. The Court does not find the jury verdict pursuasive for the case *sub judice*. Here, plaintiff Gates' role was substantially different. Plaintiff Gates' admitted activities make him a principal in facilitating the sale of the tax shelters involved herein. Osborn acted as an agent in the scheme. The cases are clearly distinguishable.

With regard to the plaintiff making or furnishing gross valuation overstatements, the defendant contends that the plaintiff "furnished the offering materials, which contained the statements concerning the value of the audio and video masters, to each of the salesmen that he recruited." The plaintiff's contention is that he acted merely as an independent contractor and did not give his personal opinion of the value of the master recordings. Thus, the plaintiff argues that he did not violate the statute because, all references made by him concerning value were restricted to the figures stated in the AEL-AVL brochures. The Court disagrees.

The plain language of Section 6700(a)(2)(B) states that one who "makes or *furnishes* a gross valuation overstatement as to any material matter" has committed a violation. Thus the plaintiff's admission that he furnished such statements is all that is needed to find a violation. The plaintiff's argument that he did not take a personal position on value is irrelevant. Also, since Section 6700(a)(2)(B) clearly imposes strict liability, the fact that the plaintiff may not have known that the values were overstated is no defense to liability.

The current standard for considering summary judgment is the one set out in the Supreme Court cases of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 106 S.Ct. at 2552.

The *Anderson* opinion is particularly instructive with regard to determining what constitutes a "genuine factual issue":

[I]t is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. ... [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party.

*Anderson,* 106 S.Ct. at 2511 (citations and footnotes omitted).

Under the summary judgment standard as quoted above, the Court is convinced that there is no genuine issue as to a material fact remaining with regard to the plaintiff's liability under Section 6700.

█ Also on the issue of calculation of the penalty, the Court believes that the defendant is entitled to summary judgment. The provision under which the plaintiff was penalized requires that a violator of Section 6700 pay "a penalty equal to the greater of $1000 or 10 percent of the gross income derived or to be derived by such person from such activity." In computing the plaintiff's penalty the IRS construed "such activity" to mean each individual sale of an abusive tax shelter. Because the plaintiff was implicated in 69 such sales a $69,000 penalty was imposed against him. The plaintiff argues that $1000 was meant to be the minimum penalty under the statute and that his penalty should have been computed by taking 10% of the gross income that he derived from his activities with the AEL and AVL programs.

Although there appears to be a conflict among the Courts over the method of calculating a Section 6700 penalty, the Court is of the opinion that both the plain lan-guage of the statute and the weight of authority favors the government's position that $1000 may be assessed against the plaintiff for each individual sale of an interest in an abusive tax shelter. The prohibited "activity" that the plaintiff engaged in was to participate in the sale of any interest in the AEL and AVL programs. The plaintiff participated in the sale of 69 such interests. Therefore, the IRS's assessment of a $69,000 penalty was proper. *See also Waltman v. United States,* 618 F.Supp. 718, 719 (S.D.Fla.1985); *McGrew v. United States,* 56 AFTR 2d 85–5805 (M.D.Fla. 1985); *Bean v. United States,* 618 F.Supp. 652 (N.D.Ga.1985).

Under the summary judgment standard set out in *Celotex Corp. v. Catrett, supra* and *Anderson v. Liberty Lobby, Inc., supra,* there is no genuine issue of material fact remaining with regard to the issue of calculation of the plaintiff's penalty under Section 6700 and summary judgment is proper.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment on the issue of the plaintiff's liability under Section 6700 be, and it is hereby, granted.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment on the issue of calculation of the plaintiff's penalty under Section 6700 be, and it is hereby, granted.

IT IS FURTHER ORDERED that the defendant prepare a precedent judgment in keeping with this opinion and submit it to the plaintiff for approval as to form and to the Court for its consideration. If the plaintiff has any objections thereto he will advise the Court within five days of his receipt of the proposed precedent. The Court will then enter its final judgment herein.